IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                          :
                                          CHAPTER 13
    TARRAN M. SPINNER,          :         CASE NO. 06-71767-MGD
                                          JUDGE DIEHL
        Debtor.                 :

---

TARRAN M. SPINNER,              :

    Plaintiff,                  :         ADVERSARY PROCEEDING NO.
                                          06-06415
        v.                      :

CASH IN A HURRY, LLC            :

    Defendant.                  :

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW, Plaintiff and moves for partial summary judgment in her Truth in Lending claim and as to liability on all other claims.

Respectfully submitted,


_____/s/_____
Ralph Goldberg
Bar No. 299475
Attorney for Plaintiff

Goldberg & Cuvillier, P.C.
755 Commerce Drive, Ste. 600
Decatur, GA 30030
(404) 378-7700
(404) 378-7708 FAX

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                          :
                                       CHAPTER 13
      TARRAN M. SPINNER,        :      CASE NO. 06-71767-MGD
                                       JUDGE DIEHL
            Debtor.            :

---

TARRAN M. SPINNER,             :

      Plaintiff,               :      ADVERSARY PROCEEDING NO.
                                      06-06415
            v.                 :

CASH IN A HURRY, LLC           :

      Defendant.               :

## STATEMENT OF UNDISPUTED FACTS

1.   Plaintiff's Exhibit 1 is a true and correct copy of the Motor Vehicle Pawn Contract tendered at deposition.

2.   Plaintiff's Exhibit 2 is a true and correct copy of the Title Application in this case tendered at deposition.

3.   Plaintiff's Exhibit 3 is a true and correct copy of Plaintiff's Exhibit 3 tendered at deposition.

4.   Plaintiff's Exhibit 4 is a true and correct copy of the Request for Production of Documents in this case.

5.   Plaintiff's Exhibit 5 is a true and correct copy of the Request for Admissions in this case.

6.   The repossession of Plaintiff's vehicle (a 1997 BMW) happened on September 21, 2006 (Friedman depo. at 30-31).

7.    Plaintiff had purchased the BMW for $5566.21 on or about October 14, 2005 (Complaint in adversary action, 06-66569-mgd, para. 6).

8.    The credit union advanced Plaintiff $7,000 (Exhibit B to complaint in 06-66569-mgd).

9.    Exhibit B to the complaint in 06-66569-mgd gives the value as $10,500.

10.   The BMW was worth at least $7000 (Statement Under penalty of perjury of Philip Elvitt).

11.   Defendant does not know who he sold the 1997 BMW to and at deposition initially did not know for how much the 1997 BMW had been sold (Dep. at 22).

12.   He did not know which repossession company repossessed the vehicle (Dep. at 22).

13.   He does not know who filled out Plaintiff's Exhibit 1 (Dep. at 25).

14.   It was Defendant's practice to highlight or write on the contract to make sure that a customer clearly understood the contract (Dep. at 25), but Mr. Friedman does not know how the orange mark got there (Dep. at 26-27).

15.   Defendant charged Plaintiff a fee to register a lien on the motor vehicle certificate of title (Dep. 28, 32, 45).

16.  Defendant sold the 1997 vehicle to one Raymond Cannata who is located somewhere in Florida but Mr. Friedman did not know how much he sold the vehicle for (Dep. at 37).

17.  He has no copy of the contract with Mr. Cannata (Dep. at 44).

18.  Defendant was notified of the bankruptcy filing prior to the sale of the 1997 BMW on September 22, 2006, Exhibit 6.  Statement of Ralph Goldberg.

19.  Plaintiff borrowed money from the Defendant for personal, family and household purposes (Spinner Statement).

20.  Defendant is a creditor who regularly lends money for which a finance charge is imposed.

21.  Plaintiff did not put the words DUE Date or write around 2/26/06 or put a magic marker on Plaintiff's Exhibit 1.  An employee of Defendant did so (Spinner statement).

                              Respectfully submitted,


                              ___/s/_____
                              Ralph Goldberg
                              Bar No. 299475
                              Attorney for Debtor-Plaintiff

Goldberg & Cuvillier, P.C.
755 Commerce Drive, Ste. 600
Decatur, GA 30030
(404) 378-7700
(404) 378-7708 FAX

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                          :
                                      CHAPTER 13
        TARRAN M. SPINNER,      :     CASE NO. 06-71767-MGD
                                      JUDGE DIEHL
             Debtor.            :

_____

TARRAN M. SPINNER,              :

        Plaintiff,              :     ADVERSARY PROCEEDING NO.
                                      06-06415
             v.                 :

CASH IN A HURRY, LLC            :

        Defendant.              :

**BRIEF IN SUPPORT**

STATEMENT OF FACTS

Plaintiff borrowed money from Defendant, a pawnbroker on October 15, 2005 (Plaintiff's Exhibit 1).  She borrowed the money for personal, family and household purposes (Statement of Plaintiff).  On Plaintiff's Exhibit 1 is an orange highlighting of 2/22/06 and → DUE DATE put there by an employee of Defendant.  The words "→ DUE DATE" and the underlining around 2/22/06 were put there by Defendant's employee (Statement of Plaintiff).

Plaintiff's 1997 BMW was repossessed on September 21, 2006 and sold thereafter (Friedman depo. at 30-31).  It is actually unclear when the vehicle was sold.  A statement

from Ralph Goldberg states that he talked to Mr. Friedman on September 22, 2006 after Exhibit 6 had been faxed, and Mr. Friedman did not tell him the vehicle was sold.  Mr. Friedman had no contract with the alleged buyer (Friedman depo. at 44) and even after checking his records, could not locate the buyer (Friedman dep. at 37).

At the time of the loan to Plaintiff, she was charged $18.00 to record a lien (Request for Admissions #1). $10.00 in addition to the title fee was required to rush the lien application (Request for Admission #2).  In addition, Defendant kept no records regarding Plaintiff's loan, although required to do so by O.C.G.A. § 44-12-134 (Request for Production of Documents #2).

The transfer of the vehicle by repossession occurred within one year of the filing.[1]  The vehicle had been purchased on or about October 14, 2005 for $5566.21 when the credit union advanced Plaintiff $7000 to purchase a 1997 BMW worth $10,000 (Complaint in adversary action # 06-66569-mgd and Exhibits A & B thereto).  At the time of the pawn transaction, the vehicle had 136,000 miles and at repossession was worth at least $7000 (Exhibit 2 to deposition, Statement of Phillip Elvitt).  At the time of

---

[1] If Defendant is to be believed, the day before the bankruptcy filing (Friedman dep. at 30-31).

transfer, Plaintiff was insolvent as her bankruptcy

schedules show.

BECAUSE DEFENDANT FAILED TO COMPLY WITH THE GEORGIA
PAWNBROKER ACT, THE TRANSACTION IS UNDER THE UCC

O.C.G.A. § 44-12-131(a)(4)(c)(i) provides that a

pawnbroker may charge the following:

> A fee equal to no more than any fee
> imposed by the appropriate state to
> register a lien upon a motor vehicle
> title, but only if the pawnbroker
> actually registers such a lien.

The request for admissions which are unanswered[2] and

therefore admitted that $18.00 went to record a lien.  In

addition,

> Ten dollars ($10.00) in addition to the
> title fee was required to rush the
> application for a lien.

(Request for Admissions #2)

It is the $10.00 which makes the transaction illegal.

In Ga. Investment Co. v. Norman, 231 Ga. 821 (1974) the

loan company charged a $1.00 notary fee because the

Industrial Loan Commissioner required the loan to be

notarized.

---

[2] Within 30 days.  By the time this Defendant requested an
extension of time the admissions were deemed admitted.
United States v. 2204 Barbara Lane, 960 F.2d 126, 130 (11th
Cir. 1992).  Plaintiff does not question the right of this
Court to relieve creditor of the effect of such admissions
upon proper motion made.

The problem was that the Georgia Industrial Loan Act did not authorize such charge.  Accordingly, the Court held that the loan violated the GILA.  Similarly, the fact that Defendant wished to rush the title application through did not allow it to charge such a fee.

In *In re Johnson*, 289 B.R. 251 (M.D.Ga. 2002)(Bank) the pawnshop repossessed prepetition when the debtor failed to redeem.  The pawnshop argued under O.C.G.A. § 44-14-403(b)(3) that the vehicle had been forfeited.  Debtor argued in pertinent part,

> Second, since the Act is in derogation of the common law, the Act must be strictly complied with before a pawn dealer can receive the special treatment provided for by the Act. The contract did not comply with the Act in two different ways: 1) the length of the initial contract was sixty days; and 2) the grace period listed on the contract was for ten days, not thirty days as required by Georgia law. Since the Act's contractual requirements were not strictly complied with, Defendant should not receive the favored treatment that pawn dealers typically receive under the Act.

The Court agreed.

> In Georgia, common-law rights, such as the English common-law right to void a usurious contract, have been codified. *See generally Houser v. The Planters' Bank of Fort Valley,* 57 Ga. 95 (1876). In fact, in Georgia, the act of charging usurious interest rates has even been criminalized. *See* O.C.G.A. §

7-4-18. The Act allows Defendant to collect interest, charges, and fees on personal property pawns that would otherwise be considered usurious and criminal. *Compare* O.C.G.A. § 44-12-131 *with* O.C.G.A. § 7-4-18. Further, pawnbrokers are exempted from O.C.G.A. § 7-4-18. O.C.G.A. § 7-4-18(a). Rights created by statute in derogation of the common law must be "exercised in the way which the [s]tatute prescribes, and in no other way...." *Persons v. Hight*, 4 Ga. 474 (1848); *see also Diggs v. Swift Loan and Finance Company, Inc.*, 154 Ga.App. 389, 391, 268 S.E.2d 433, 435 (1980). Therefore, the Act must be strictly complied with before Defendant would be entitled to summary judgment as a matter of law.

The contract between Debtor and Defendant does not comply with the Act in two ways. First, the contract is for approximately sixty days, twice as long as allowed for in the Act. *See* O.C.G.A. § 44-12-131(a)(1). While Defendant may have been trying to give Debtor, or all of its customers for that matter, a "break" by allowing the first thirty days to be "free," this contract term is in violation of O.C.G.A. § 44-12-131(a)(1). Defendant argues that the contract is for thirty days, with a renewal of thirty days. However, the contract is dated January 20, 2001, with a maturity date of March 21, 2001, making the contract length approximately sixty days. ( *See* Aff. of Ron Meeks, Doc. 7, Ex. A).

Second, pursuant to O.C.G.A. § 44-14-403(b)(1), the grace period for pawn transactions involving automobiles is thirty days. O.C.G.A. § 44-14-403(b)(1). The contract only grants a ten-day grace period. ( *See* Aff. of Ron Meeks, Doc. 7, Ex. A). Defendant argues

9

that it gave Debtor the benefit of the
thirty-day grace period. This argument
is not persuasive on the Motion for
Summary Judgment. Regardless of whether
Debtor received more than the ten days
stated in the contract, this contract
term is in violation of O.C.G.A. § 44-
14-403(b)(1). Defendant is not entitled
to summary judgment as a matter of law
because the contract is in clear
violation of the statutory requirements
for automobile title pawns.

To the same effect is *In re Brown*, 304 B.R. 544

(M.D.Ga. 2004)(Bank),

The Court has reviewed *Johnson,* as well
as *Hooks v. Cobb Ctr. Pawn & Jewelry
Brokers, Inc.,* 241 Ga.App. 305, 527
S.E.2d 566 (1999), and the statutory
scheme for pawn brokers found at
O.C.G.A. §§ 44-12-130 through 44-12-138
& 44-14-403. O.C.G.A. §§ 44-12-130
through 44-12-138 & 44-14-403 (2002 &
Supp.2003); *Johnson,* 289 B.R. at 253-
254; *Hooks,* 241 Ga.App. at 306-307, 527
S.E.2d at 568-569. The Court does not
change its position from the ruling in
*Johnson. Johnson,* 289 B.R. at 253-254.
"Rights created by statute in
derogation of the common law must be
'exercised in the way which the
[s]tatute prescribes, and in no other
way....' *Persons v. Hight,* 4 Ga. 474
(1848); *see also Diggs v. Swift Loan
and Finance Company, Inc.,* 154 Ga.App.
389, 391, 268 S.E.2d 433, 435 (1980)."
*Id.*

Thus, because Defendant's contract is in violation of

the pawnshop act, "defendant should not receive the favored

treatment that pawn dealer typically receive under the

Act." Johnson, *supra*.

10

In other words, the transaction was under the UCC and Defendant violated the automatic stay.[3]  *See* <u>Motors Acceptance Corp. v. Rozier</u>, 278 Ga. 52 (2004).

Moreover, in answer to Request for Production #2,

> All records maintained regarding
> Plaintiff's loan with Defendant
> pursuant to O.C.G.A. § 44-12-134

Defendant responded there were none.  That statute provides,

> The record of each pawn or purchase
> transaction provided for <u>in Code
> Sections 44-12-132</u> and <u>44-12-133</u> shall
> be maintained for a period of not less
> than four years.

The failure to maintain such records is a misdemeanor. O.C.G.A. § 44-12-137(a)(5).

It can hardly be said that Defendant has strictly complied with this Act, so that it can receive the special treatment provided for by the Act.

## DEFENDANT VIOLATED THE AUTOMATIC STAY BECAUSE PLAINTIFF HAD AN ARGUABLE INTEREST IN THE BMW

In <u>In re Chestnut</u>, 422 F.3d 298 (5th Cir. 2005), the Court held that a creditor had violated the automatic stay

---

[3] For purposes of this motion only, the Debtor declines to enter the thicket as to whether <u>In re Bell</u>, 279 B.R. 890 (N.D.Ga. 2002)(Bank) or <u>In re Schwalb</u>, 347 B.R. 726 (D.Nev. 2006) (Bank) correctly determines whether property is forfeited under the Title Pawn laws and thus the automatic stay does not apply.  She reserves the right to argue the question however.

by foreclosing on property in which the debtor had claimed
an interest as long as he had an arguable claim of rights.
Rather than repeating the Court's analysis, Debtor
respectfully refers the Court to it.  Chestnut does not
stand alone.  *See* In re Levenstein, 371 B.R. 45, 48
(S.D.N.Y. 2007)(Bank); Schmidt v. U.S. Marshall, 2007 WL
470507 (S.D.Tex. 2007)(Bank); In re Schweitzer, 2007 WL
1035150 (E.D.La. 2007)(Bank).

    In this case Debtor did have an arguable interest in
the vehicle under Motors Acceptance Corp. v. Rozier, 278
Ga. 52 (2004) and In re Schwalb, 347 B.R. 726 (D.Nev. 2006)
(Bank) as well as In re Brown, 304 B.R. 544 (M.D.Ga. 2004)
(Bank) and In re Johnson, 289 B.R. 251 (M.D.Ga. 2002).

    Defendant violated the automatic stay[4].

THE REPOSSESSION AND SALE OF THE BMW FOR $2500 TO $3000 WAS
A FRAUDULENT TRANSFER

    In In re Bell, 279 B.R. 890 (N.D.Ga. 2002)(Bank) the
Court held that a transfer such as one that took place
herein is " a claim under 11 U.S.C. § 548(a)(1)(B)."  *Id.*
at fn. 2.  The difference between In re Bell and this case
is that the creditor sold the 1997 BMW the same day

---

[4] This may be a question of fact.  Plaintiff notes that
Defendant's owner did not tell her attorney he had sold the
vehicle (Goldberg statement) and has no copy of a contract
with the man he purportedly sold the vehicle to.

bankruptcy was filed[5] or the day before (Friedman depo. at 30-31).

As Judge Bonapfel explained, ordinarily in a pawnshop case[6], debtor's interest in the vehicle has terminated and the property is no longer property of the estate.  However,

> The vehicle will be property of the estate under § 541(a)(3) if the forfeiture is avoidable as a fraudulent transfer under § 548(a)(1)(B). To avoid the transfer under § 548(a)(1)(B), Debtor must establish that (1) she made a transfer of her property to Pawnbroker (2) within one year before the filing of her bankruptcy petition (3) for less than a reasonably equivalent value in exchange for the transfer and (4) at the time of the transfer she was insolvent or the transfer rendered her insolvent.

There was a transfer of a 1997 BMW on September 21, 2006 because of the repossession (Friedman dep. at 9, 30-31).  This took place within one year before the filing of the bankruptcy.  <u>Bell</u>, *supra* at 898.  In other words, her debt was greater than her property at a fair valuation

> excluding property that is exempt in the bankruptcy case and that is transferred, concealed, or removed with intent to hinder, delay, or defraud creditors....

---

[5] This is completely similar since Defendant claims to have no documents documenting the sale (Answer to Request for Production #1).
[6] *See* fn. 2*, supra*.

<u>Bell</u>, *id.* Her schedule to her petition provide proof of the element.

The next question is the third element

> for less than a reasonably equivalent
> value in exchange for the transfer.

The vehicle herein was sold for $2500-3000 on September 21, 2006.

According to paragraph 6 of the adversary action by the credit union (06-66569-mgd),

> On or about October 14, 2005, the
> Debtor furnished the purchase of the
> BMW with Plaintiff in the amount of
> $5,566.21....

The document attached to the complaint shows the credit union advanced Ms. Spinner $7000.00 (Ex. B to the complaint).

At the bottom of Ex. B appears the following:

 Property BMW       Model S281      Year 1997 ....

**Value $10,500**

(emphasis added).

Even a year after the sale, one can find these vehicles selling for $5900 to $10,900 on the Internet (Ex. A).

At deposition, Defendant answered (after counsel objected to a "legal conclusion") that the vehicle was worth $2500 to $3000 (Dep. at 38). He used the September

14

2006 Black book.  The opinion is devoid of any basis and is not admissible.

Because the vehicle was worth at least $5900 a year after the repossession, there was a fraudulent transfer. Bell, *supra*.

Thus, the BMW was property of the estate and the repossession was in violation of the automatic stay. Alternatively, Plaintiff is entitled to the damages appropriate in a fraudulent transfer case.

DEFENDANT VIOLATED THE TRUTH IN LENDING ACT

**A.    FAILURE TO PROPERLY DISCLOSE SECURITY**

Inside the federal box on Plaintiff's Exhibit 1 is a disclosure.

> Security: Pledger agrees to give a
> security interest in the property
> identified by this contract.

Outside the federal box, presumably Defendant is referring to:

> Pawned Item: 97 BMS 528i CAP Automatic

Since the earliest days of Truth in Lending, the Court of Appeals has held that the act is to be liberally construed,

> The result we reach today is consistent
> with the statute's goal of creating a
> system of "private attorney generals"
> who will be able to aid the effective

enforcement of the Act. Section 1640 is
intended to allow aggrieved consumers
to participate in policing the Act,
Ratner v. Chemical Bank New York Trust
Co., [329 F.Supp. 270 (S.D.NY 1971)],
and its language should be construed
liberally in light of its broadly
remedial purpose. *Id*. The domain of
consumer credit with its allied
commercial practices is no longer in
the *laissez faire* era of *caveat emptor*.
That doctrine is increasingly relegated
to its proper place as a historical
relic without modern application. The
regulatory scheme forcefully expounds
an emerging ethic of " *caveat vendor*,"
and we will not strain to avoid giving
effect to the Federal Consumer Credit
*Protection* Act.

Thomas v. Myers-Dickson Furniture Co., 479 F.2d 740, 748

(5th Cir. 1973).

The Court also observed at 745 "we deem it sufficient

to iterate that 'exceptions' not mentioned in the Act

should not lightly be read into it."

The Court has not strayed from this position, nor has

the Eleventh Circuit and it continues to be the law. James

v. Home Construction Co., 621 F.2d 727, 729 (5th Cir. 1980)

("the Truth-in-Lending Act, a remedial act, has usually

been given a broad liberal interpretation since it is

assumed that was the intent of Congress"). Cody v.

Community Loan Corp. of Richmond County, 606 F.2d 499, 505-

506 (5th Cir. 1979) ("We have stressed that TIL is a

remedial statute that is to be liberally construed in favor

of the consumer"); In re Wood, 643 F.2d 188, 194 (5th Cir.
1980)("the Act has been found uniformly to be remedial in
nature and thereby liberally and broadly construed in favor
of the consumer").  As the Court summed up in Rodash v. AIB
Mortgage Co., 16 F.3d 1142, 1144 (11th cir. 1994).

> Congress designed TILA to promote the
> informed use and awareness of the cost
> of credit by consumers. *Shroder v.*
> *Suburban Coastal Corp., 729 F.2d 1371,*
> *1380 (11th Cir.1984)*. The Act ensures a
> meaningful disclosure of credit terms
> to enable consumers to compare readily
> the various credit terms available in
> the marketplace. *Id.* Congress intended
> the statute to create a system of
> private attorneys general to aid its
> enforcement; thus, to further its
> remedial purpose, we liberally construe
> its language in favor of the consumer.
> *McGowan v. King, Inc., 569 F.2d 845,*
> *848 (5th Cir.1978)*.FN1 *Accord Smith v.*
> *Fidelity Consumer Discount Co., 898*
> *F.2d 896, 898 (3rd Cir.1990)*.
> Additionally, creditors must strictly
> comply with TILA's requirements.
> *Shroder, 729 F.2d at 1380* (The
> creditor's disclosures must be in  "the
> proper technical form and in the proper
> locations on the contract, as mandated
> by the requirements of TILA and
> Regulation Z. Liability will flow from
> even minute deviations from
> requirements."). Moreover, the consumer
> may sue for enforcement even if she is
> not actually deceived or harmed.
> *Zamarippa v. Cy's Car Sales, 674 F.2d*
> *877, 879 (11th Cir.1982)* ("An objective
> standard is used to determine
> violations of the TILA, based on the
> representations contained in the
> relevant disclosure documents; it is
> unnecessary to inquire as to the

> subjective deception or
> misunderstanding of particular
> consumers.").

And the Eleventh Circuit only recently restated there is a "strong remedial purpose of TILA and continual admonitions that we construe TILA and Regulation Z liberally in the consumer's favor." Bragg v. Bill Heard Chevrolet, Inc., 374 F.3d 1060, 1068 (11th Cir. 2004).

For over a hundred years, to liberally construe a statute means to extend its coverage.

> In Sutherland on Statutory Construction
> (section 430) it is said: 'Liberal
> construction is given to suppress the
> mischief and advance the remedy. For
> this purpose, as has already been said,
> it is a settled rule to extend the
> remedy as far as the words will admit,
> that everything may be done in virtue
> of the statute in advancement of the
> remedy that can be done consistent with
> any construction.

Quoted in Campbell v. Cook, 26 S.W. 486 (Tex. 1894), *accord* Bice  ex rel. Estate of Bice v. United States, 61 Fed. Cl. 420, 430 (Fed. Cl. 2004); Kaplan v. Tabb Associates, Inc., 657 N.E.2d 1065, 1067 (Ill.App. 1995).

As Judge Rubin summed up,

> Where the nature of an act is remedial,
> as here, it should be construed
> liberally in an attempt to provide the
> remedy, not avoid it. See Thomas v.
> Myers-Dickson Furniture Co., 5 Cir.
> 1973, 479 F.2d 740.

<u>Starks v. Orleans Motors</u>, 372 F.Supp. 928, 932 (E.D.La. 1974), *a'ffd*. 500 F.2d 1182 (5th Cir. 1974).

15 U.S.C. § 1638(a)(9) requires disclosure,

> Where the credit is secured, a statement that a security interest has been taken in ...(B) property not purchased as part of the credit transaction identified by item or type.

12 CFR § 226.18(m) requires disclosure,

> The fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type.

12 CFR § 226.17(a) requires disclosure,

> The disclosure shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures under section 226.18.

Further, the Court

> must assess the adequacy of disclosure, at least in part, by the audience for which disclosure was intended.

<u>Edmondson v. Allen-Russell Ford</u>, 577 F.2d 291, 296 (5th Cir. 1978).  In the instant case that audience would have to treat the words "pawned item" and security or security interest the same.

Still there is § 226.17(a) to contend with.

In <u>Leathers v. Peoria Toyota-Volvo</u>, 824 F.Supp. 155

(C.D.Ill. 1993) disclosures were made outside the federal

box.

> In *Marshall v. Security State Bank of*
> *Hamilton*, 121 B.R. 814 (C.D.Ill.1990),
> *aff'd on other grounds by* <u>In Re</u>
> <u>Marshall</u>, 970 F.2d 383 (7th Cir.1992),
> this Court found that TILA is designed
> to inform the consumer "as to the
> nature of the transaction" so that he
> or she may "be able to compare and shop
> for credit from various creditors." *Id.*
> at 816. To this end, the regulations
> requiring disclosures to be clear,
> conspicuous and segregated from
> irrelevant information have taken the
> form of what is commonly referred to as
> the "Federal Box." *Id.* at 816. *See also*
> <u>12 C.F.R. § 226.17(a)(1), Supp. I</u>
> <u>(1993)</u>.[FN3] Compliance with these
> regulations is satisfied when the
> creditor places all the disclosures on
> one side of one document (unless there
> is not enough room) or groups the
> disclosures together within the Federal
> Box. *See* <u>12 C.F.R. § 226.17(a)(1)</u> and <u>§</u>
> <u>226.18(m), Supp. I (1993)</u>.

> <u>FN3.</u> "Clear and conspicuous" means,
> among other things, that the
> disclosures must be presented in a way
> that does not obscure the relationship
> of the terms to each other."
> "Segregation of disclosures" means that
> the disclosures "may appear on a
> separate sheet of paper or may be set
> off from other information on the
> contract or other documents: by
> outlining them in a box, by bold print
> dividing lines, by a different color
> background, by a different style type."
> <u>12 C.F.R. § 226.17(a)(1), Supp. I</u>
> <u>(1993)</u>.

*Id.* at 158.   Moreover,

> Disclosure by incorporating references
> outside the disclosure statement,
> however, is not "clear and conspicuous"
> because it "obscures the relationship
> of the terms to each other" by
> segregation and thus does not comply
> with TILA. *See* 12 C.F.R. § 226.17(a)(1)
> and § 226.18(m), Supp. I (1993). *See
> also Marshall v. Security State Bank,*
> 121 B.R. 814, 816 (C.D.Ill.1990) ("the
> actual reference to the vehicle is
> outside the 'Federal Box' and cannot be
> considered to be part of the required
> disclosures").

*Id.* at 158.   The Court held that the disclosures were

inadequate.

> Further, the paragraph at the bottom of
> the contract, which mentions the
> "property described above," is outside
> the disclosure statement within the
> Federal Box and thus does not comply
> with the requirement that disclosures
> be grouped together.

*Id.* at 159-160.   *See also* Clay v. Johnson, 22 F.Supp.2d

832, 837-841 (N.D.Ill. 1998) reversed on other grounds 264

F.3d 744 (7th Cir. 2001); In re Cook, 76 B.R. 661 (C.D.Ill.

1987)(Bank).

### B.   FAILURE TO DISCLOSE THE APR AND FINANCE CHARGE MORE CONSPICUOUSLY

In the same contract are disclosures of the APR,

finance charge, amount financed and total of payments.   The

printing is the same.   Indeed the printing of YOUR PAYMENT

SCHEDULE WILL BE and ITEMIZATION OF AMOUNT FINANCED appears to be as large, if not larger.  Add to this, the bracketing of all the disclosures but the APR by Defendant's employee, and the orange mark (on the original it appears over the words 2/22/06 → DUE DATE and the 2/22/06 is also bracketed) by that same employee, it is clear that the APR has not been disclosed more conspicuously.  The failure to do so is a TIL violation leading to statutory damages.[7] Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1380 (11th Cir. 1984); Malfa v. Household Bank, 825 F.Supp. 1018, 1021 (S.D.Fla. 1993), aff'd. 50 F.3d 1037 (11th Cir. 1995); In re Pittman, 165 B.R. 586 (D.Md. 1994)(Bank); In re Cervantes, 67 B.R. 816 (E.D.Pa. 1986)(Bank).

The commentary (226.17(a)(2)-2) says these disclosures "may be made more conspicuous in any way that highlights them in relation to the other required disclosures."  Presumably, Defendant believes that the "equal signs" around the APR and Finance charge do this.  As in Dixey v. Idaho First Nat. Bank, 677 F.2d 749 (9th Cir. 1982).

> The Bank failed to give required
> emphasis to these factors. "Finance
> charge" and "Annual percentage rate"
> are printed in lower and upper case
> letters approximately the same size as

---

[7] There is contrary authority outside this Circuit.  Brown v. Payday Check Advances, Inc., 202 F.3d 987 (7th Cir. 2000).

> the other printed items in the
> Agreement. Though the two terms are in
> boldface type, numerous other headings
> on the page also are in boldface type.
> The cost terms are not more conspicuous
> than the many other disclosures on the
> printed agreement, and would not
> particularly catch the borrower's
> attention.

*Id.* at 751-752.  To the same effect are <u>Shroder</u>, *supra* and

<u>Herrera v. First Northern S&L</u>, 805 F.2d 896, 900 (10th Cir.

1986).

In the instant case, what is most conspicuous is the

orange line over the due date.[8]  Given that line and the

numerous disclosures in capital letters, as well as the

bracketing of everything except the APR, the disclosure of

the APR would hardly catch the consumer's eye.  *See* <u>Powers</u>

<u>v. Sims & Levin Realtors</u>, 396 F.Supp. 12, 19 and fn. 6

(E.D.Va. 1975), *aff'd.* in part 542 F.2d 1216 (4th Cir.

1976).

Indeed, if this Court looks at disclosures that have

passed muster, the inadequacy of the disclosure should be

clear.  <u>Childs v. Ford Motor Co.</u>, 470 F.Supp. 708, 710

(N.D.Ala. 1979); <u>Rosencrantz v. Auro Loan </u>(1974-1980

---

[8] The Court's copy of course is not orange and this may turn
out to be an issue of fact.  <u>Hyde v. Hutto Enterprises,
Inc.</u>, 1994 WL 653504 (M.D.Ala. 9/29/1994); <u>Knapp v.
Americredit Fin. Sev. Inc.</u>, 245 F.Supp.2d 841 (S.D.W.Va.
2003).

Transfer Bender) CCH Cons. Credit Guides Par. 98, 136

(D.Conn. 1977).

Plaintiff is entitled to statutory penalties of twice

the finance charge or in this case $1000 under 15 U.S.C. §

1640, costs and attorney fees.

CONCLUSION

Plaintiff is entitled to summary judgment that

Defendant violated the automatic stay or there was a

fraudulent transfer. What damages are to be awarded

remains for trial. Plaintiff is entitled to $1000 in Truth

in Lending damages. ( and attorney's fees to be proven)

Respectfully submitted,

__/s/_____
Ralph Goldberg
Bar No. 299475
Attorney for Debtor-Plaintiff

Goldberg & Cuvillier, P.C.
755 Commerce Drive, Ste. 600
Decatur, GA 30030
(404) 378-7700
(404) 378-7708 FAX

### CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel of record for the opposing party in the foregoing matter with a copy of this document by depositing in United States Mail copies of the same in properly addressed envelopes with adequate postage thereon *or* by notification of electronic filing.

Mr. Wade Anderson
925-B Peachtree Street, #355
Atlanta, GA 30309


This __28th___ day of __January_____, 2008


_____/s/_____
Ralph Goldberg
Attorney for Debtor-Plaintiff

Goldberg & Cuvillier, P.C.
755 Commerce Drive, Ste. 600
Decatur, GA 30030
(404) 378-7700
(404) 378-7708 FAX